IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THE MID-ATLANTIC SOARING ASSOCIATION, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | | Civil Action No. RDB 05-2110 |
| | * | |
| FEDERAL AVIATION, ADMINISTRATION *et al.*, | * | |
| | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**<u>MEMORANDUM OPINION</u>**

Plaintiff Mid-Atlantic Soaring Association, Inc. ("MASA" or "Plaintiff") brings this action seeking relief under 42 U.S.C. § 1983 and asserting state law claims for breach of lease and intentional interference with a contract and prospective advantage. Plaintiff asserts that this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and seeks a declaratory judgment under 28 U.S.C. § 2201. MASA has named as defendants the Federal Aviation Administration ("FAA"), along with three "Municipal Defendants": the City of Frederick, Maryland ("Frederick"), the former Mayor of Frederick, Jennifer Dougherty ("Dougherty"),[1] and the Frederick Municipal Airport's manager, Charles Abell ("Abell") (all collectively referred to as "Defendants").

Pending before this Court are two Motions to Dismiss, one filed by the FAA and another

---

[1] Municipal Defendants note that since the filing of the complaint, William J. Holtzinger has been sworn in as the new Mayor of Frederick, and argue that Dougherty should be dismissed from this action, with Mayor Holtzinger substituted in her place. (*See* Mun. Defs.' Reply Mem. Supp. Mot. Dismiss p. 2 n.3.) In light of this Court's ruling below, it is unnecessary to decide the matter of substitution of named Defendants.

1

by the Municipal Defendants. The FAA seeks dismissal of Count I (declaratory judgment), the only count in which it is named as a defendant, under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. Municipal Defendants seek dismissal of all Counts under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. No hearing is necessary on these motions. *See* Local Rule 105.6 (D. Md. 2004). For the reasons that follow, Defendants' Motions to Dismiss are GRANTED.

## BACKGROUND

This action arises from a dispute between Plaintiff and Defendants regarding the status of, and Plaintiff's access to, a turf runway at Frederick Municipal Airport. Plaintiff is a non-profit organization of glider (non-powered) pilots. (*See* Compl. ¶ 1.) MASA's approximately 165 members "fly non-powered airplanes and on average have 6,000 operations (take-offs/landings) per year." (Compl. ¶¶ 2-3.) Members have traditionally used the turf runway at the Airport for gliding because it is "preferable in a mixed-use setting" to have "separate operations areas for power and glider and separate flight and landing patterns for power and glider." (Compl. ¶ 3.) Plaintiff alleges that MASA's use of the turf runway is consistent with FAA guidelines. (*See* Compl. ¶ 3).

MASA has been based at the Frederick Airport since 1966, and in 1989, MASA entered into a lease agreement with Frederick for hangar space.[2] (*See* Pl.'s Opp. Mun. Defs.' Mot.

---

[2] In addition to the Complaint, MASA's lease with its addenda are documents "upon which Plaintiff relies in bringing the action" and may be considered by this Court in deciding the Municipal Defendants' Motion to Dismiss without converting the Rule 12(b)(6) motion to one for summary judgment. *Biospherics v. Forbes*, 989 F. Supp. 748, 749 (D. Md. 1997) (considering as part of the defendant's motion to dismiss an article attached to the defendant's

Dismiss, Ex. 1.)  The lease was augmented at least twice, and in 1991 the parties agreed to a twenty year lease under which MASA would relocate its hangar.  (*See* Compl. ¶ 4.)  The 1991 addendum noted that the FAA had objected to the initial proposed site of the relocated MASA hangar, and the addendum included the following language:

> COMPLIANCE WITH FAA STANDARDS.  If during the term of the lease dated September 7, 1989 between MASA and the City [of Frederick], the FAA changes its position with respect to its acceptance of the penetration of the glider hangar into the 7:1 transitional surfaces for the visual approach to the turf runway 12/30 and the proposed non-precision instrument approach to Runway 12 as indicated in Exhibits 1, 2 and 3, MASA, at its own cost, will take whatever corrective steps are required by the FAA, so long as the need for such steps originated due to the negligence of MASA, its officers, employees or agents.

(Pl.'s Opp. Mun. Defs.' Mot. Dismiss, Ex. 2. ¶ 2.)  This is the only reference to the "turf runway" in the contract at issue.  (*See* Pl.'s Opp. Mun. Defs.' Mot. Dismiss, Ex's. 1-3.)

MASA members utilized the turf runway from 1991 until the airport prohibited its use in 2004.  (*See* Compl. ¶¶ 2, 20.)  Plaintiff alleges that Defendants currently deny that the turf runway was ever "constructed, approved or existed." (*See* Compl. ¶¶ 19-20.)

MASA continues to have access to a paved runway parallel to the turf runway, but claims that "these flights force commingling of powered and glider traffic, and the use of a turf runway, with a separate traffic pattern from powered traffic, is essential for providing the highest margin

---

motion that was the subject of a suit) (citing *Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 46-48 (2d Cir. 1991)).  No other documents outside the pleadings were considered in this Court's decision on Defendants' Motions.  As a result, Defendants' Motions to Dismiss will not be converted to ones for summary judgment.  *See id.* at 750.  *See also Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (finding that a court may "consider evidence outside the pleadings" in a 12(b)(1) motion to determine if it has jurisdiction over the case.)

of safety for glider operations." (Compl. ¶ 21.) Plaintiff claims that as a result of its loss of the turf runway, (i) members "have been deprived of a valuable economic benefit," (ii) the lease with Frederick has lost significant value, (iii) MASA has lost members and revenue, and (iv) "its essential purpose has been threatened with destruction by the actions of" Defendants. (Compl. ¶ 21.) Plaintiff believes that Abell denied MASA access to the turf runway in an effort to close MASA's operations entirely, in order to use the space occupied by the turf runway and MASA's hangar for developing the Airport. (*See* Compl. ¶ 18.) Indeed, before this lawsuit was filed, Plaintiff sought formal mediation from the FAA to resolve the turf runway dispute, but the FAA denied mediation. (*See* Pl.'s Mem. Supp. Opp. Mun. Defs.' Mot. Dismiss p. 3.)

The Airport receives federal funds through the FAA's grant-in-aid program, known as the Airport Improvement Program (AIP).[3] *See* 49 U.S.C. §§ 47101 *et seq*.; FAA's Mem. Supp. Mot. Dismiss p. 2, 6. This program was created by the Airport and Airway Improvement Act of 1982 ("AAIA"), as amended, 49 U.S.C. §§ 47101 *et seq*. A public agency may submit an application for funding under AIP as an airport sponsor. *See* 49 U.S.C. § 47102(24).

The FAA has also promulgated a set of regulations entitled "Rules of Practice For Federally Assisted Airport Proceedings" ("Part 16 Proceedings") which apply to "all proceedings involving Federally-assisted airports" including when proceedings are instituted "by filing with the FAA a complaint." 14 C.F.R. § 16.1(a). A "person directly and substantially affected by any alleged non-compliance" with the AIP program may file a complaint with the FAA, 14 C.F.R. § 16.23(a), if the party shows that it made "good faith efforts to resolve the

---

[3] Plaintiff claims that Frederick and the then-mayor of Frederick sought and received FAA funds to construct the turf runway in 1984, (*See* Compl. ¶¶ 9 and 11), and that they did not follow FAA guidelines for decommissioning the turf runway. (*See* Compl. ¶ 28.)

disputed matter informally prior to filing the complaint" and there is "no reasonable prospect for timely resolution of the dispute." 14 C.F.R. § 16.21(b). Following a determination by the FAA, a party may pursue an administrative appeal within the FAA. 14 C.F.R. § 16.31(c). After this administrative appeal, the party may then seek judicial review with a federal court of appeals. *See* 49 U.S.C. § 46110; 14 C.F.R. § 16.247. In addition to the original complaining party, any party "disclosing a substantial interest in an order issued by the . . . Administrator of the Federal Aviation Administration" may seek judicial review with a United States Court of Appeals. 49 U.S.C. § 46110(a). Although Plaintiff requested mediation with the FAA, MASA did not file a "Part 16" complaint with the FAA. (*See* Pl.'s Mem. Supp. Opp. Mun. Defs.' Mot. Dismiss p. 3.)

Plaintiff's August 3, 2005 Complaint contains the following counts: declaratory judgment against all Defendants (Count I), breach of lease against Frederick seeking compensatory damages of $500,000 (Count II), intentional interference with a contract and prospective advantage against Municipal Defendants seeking $500,000 (Count III), and violations of Plaintiff's property rights and due process under 42 U.S.C. § 1983 against Municipal Defendants, seeking compensatory damages of one million dollars plus attorneys' fees and costs (Count IV). The FAA and Municipal Defendants filed separate motions to dismiss on December 1, 2005.

## STANDARDS OF REVIEW

### I.   Motion to Dismiss

Defendants seek to dismiss this action under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. All Defendants claim that this Court lacks subject matter jurisdiction over this case. Motions to dismiss for lack of subject matter jurisdiction are decided under Rule

5

12(b)(1) of the Federal Rules of Civil Procedure. "The plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court." *Biktasheva v. Red Square Sports, Inc.*, 366 F. Supp. 2d 289, 294 (D. Md. 2005). The court may "consider evidence outside the pleadings" in a 12(b)(1) motion to determine if it has jurisdiction over the case. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). "The court should grant the 12(b)(1) motion only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Biktasheva*, 366 F. Supp. 2d at 294 (quoting *Richmond*, 945 F.2d at 768).

Alternatively, Municipal Defendants seek to dismiss Counts II-IV pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. When the legal sufficiency of a complaint is challenged under Rule 12(b)(6), the court assumes "the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *Eastern Shore Mkts. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). A Rule 12(b)(6) motion to dismiss "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325 (4th Cir. 2001); *see also Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). Furthermore, the "Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Rather, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal*, 248 F.3d at 325-26; *see also Swierkiewicz*

*v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).  However, while "notice pleading requires generosity in interpreting a plaintiff's complaint . . . generosity is not fantasy." *Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 191 (4th Cir. 1998).

In reviewing the complaint, the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.  *Venkatraman*, 417 F.3d at 420*; Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  The court must disregard the contrary allegations of the opposing party.  *A.S. Abell Co. v. Chell*, 412 F.2d 712, 715 (4th Cir. 1969).  However, in considering a motion to dismiss, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments" nor "the legal conclusions drawn from the facts."  *Eastern Shore Mkts., Inc.,* 213 F.3d at 180; *see also Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 329 F. Supp. 2d 574, 578 (D. Md. 2004).

## II.     Declaratory Judgment

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon filing of appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  However, the Declaratory Judgment Act "does not provide a source of jurisdiction which is independent of substantive federal law."  *Gibraltar, P.R., Inc. v. Otoki Group, Inc.*, 104 F.3d 616, 619 (4th Cir. 1997) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 16-17 n.14 (1983)).

The United States Court of Appeals for the Fourth Circuit has "held that district courts

have great latitude in determining whether to assert jurisdiction over declaratory judgment actions." *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998); *see also Wilton v. Seven Falls Company*, 515 U.S. 277, 286 (1995); *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494-95 (1942) (discussing a district court's exercise of discretion when there is a state suit involving the same parties and state law issues). In addition, the Fourth Circuit has provided guidance on the exercise of this discretion. Declaratory judgment should not be used "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted." *Aetna Cas. & Sur. Co.,* 139 F.3d at 422 (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)).

In an action seeking declaratory judgment, there is still a requirement imposed by Article III of the Constitution that there be a case or controversy. *See Rental Tools & Equipment Co. Intern., Inc. v. Marsh & McLennan, Inc.*, 1989 WL 234697, *4 (D. Md. Sept. 25, 1989). Although this determination can be difficult for declaratory judgment actions,"[b]asically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

## DISCUSSION

### I. Plaintiff's Federal Claims

Plaintiff asserts two possible bases for federal question jurisdiction. First, Plaintiff contends that Count I, which seeks a declaratory judgment under 28 U.S.C. § 2201, provides a

basis for federal question jurisdiction. Second, Count IV asserts a claim under 42 U.S.C. § 1983 for alleged violations of MASA's due process and rights under the Airport and Airway Improvement Act ("AAIA"). Municipal Defendants have raised multiple alternative arguments in support of their motion to dismiss, including failure to exhaust administrative remedies, preemption, lack of subject matter jurisdiction, failure to state a constitutional injury, and qualified immunity. This Court will first address the two claims that Plaintiff asserts provide this Court with federal question jurisdiction, as Defendants have challenged this Court's jurisdiction over this action.

### A.     Count I - Declaratory Judgment under 28 U.S.C. § 2201

In Count I of the Complaint, Plaintiff requests that the Court declare that "the turf runway was applied for, approved and constructed and utilized in accordance with proper FAA procedure and it is an existing runway to remain open for use, for at least twenty (20) years from the date of the grant agreements and assurances." (Compl. ¶ 32.) The FAA argues that this Court does not have subject matter jurisdiction over Count I because the Declaratory Judgment Act "is not a source of federal subject matter jurisdiction in and of itself." (FAA's Reply Mem. Pl.'s Opp. FAA's Mot. Dismiss p. 2-8.) Likewise, Municipal Defendants claim that the Declaratory Judgment Act does not provide a source of jurisdiction independent of substantive federal law. (Mun. Defs.' Mem. Supp. Mot. Dismiss at p. 7.)

Indeed, it is well-settled law in the Fourth Circuit that the Declaratory Judgment Act "does not provide a source of jurisdiction which is independent of substantive federal law." *Gibraltar, P.R., Inc. v. Otoki Group, Inc.*, 104 F.3d 616, 619 (4th Cir. 1997) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 16-17 n.14 (1983)); *Interstate*

*Petroleum Corp. v. Morgan*, 249 F.3d 215, 221 n.7 (4th Cir. 2001) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)). Furthermore, this Court has previously held that the AAIA does not provide a private right of action, and therefore cannot serve as an independent basis of jurisdiction. *See Skydiving Ctr. of Greater Washington, D.C., Inc. v. St. Mary's County Airport Comm'n*, 823 F. Supp. 1273, 1279 n.2 (D. Md. 1993). Because the FAA is a Defendant only in Count I, and MASA has alleged no independent basis for jurisdiction in its case against the FAA, this Court has no jurisdiction over Count I against the FAA.[4]

**B.     Count IV - Claim under 42 U.S.C. § 1983**

In Count IV, Plaintiff alleges a claim under 42 U.S.C. § 1983, stating that Municipal Defendants "individually and in concert, acted under color of state law authority to deprive the Plaintiff of rights protected by the U.S. Constitution and its laws." (Compl. ¶ 41.) Plaintiff specifically alleges that Municipal Defendants violated Plaintiff's right to due process: "grant

---

[4] Alternatively, Defendants argue that this Court lacks subject matter jurisdiction over Count I because MASA failed to exhaust all administrative remedies prior to filing its suit, and that even if it did exhaust its administrative remedies, the Court of Appeals is the proper venue for judicial review. (FAA's Mem. Supp. Mot. Dismiss p. 8-11; Mun. Defs.' Mem. Supp. Mot. Dismiss p. 5-6.) Plaintiff disputes that it must exhaust the administrative remedies available to it prior to seeking judicial relief in a court. (Pl.'s Opp. FAA's Mot. Dismiss p. 4-6.)

Even if there was a basis for jurisdiction, this Court would require that MASA exhaust its administrative remedies prior to seeking judicial review. *See McCarthy v. Madigan,* 503 U.S. 140, 144 & 146 (1992) ("[W]here Congress has not clearly required exhaustion, sound judicial discretion governs. . . . In determining whether exhaustion is required, federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion.") (internal citations omitted); *see also Volvo GM Heavy Truck Corp. v. U.S. Dept. of Labor*, 118 F.3d 205, 209 (4th Cir. 1997).

Moreover, assuming that Part 16 proceedings are mandatory, even if MASA had exhausted its remedies with the FAA, this Court is not the proper forum for judicial review. *See* 49 U.S.C. § 46110; 14 C.F.R. § 16.247 (a party may seek judicial review with a federal court of appeals following Part 16 proceedings with the FAA); Mun. Defs.' Mem. Supp. Mot. Dismiss p. 6; FAA's Mem. Supp. Mot. Dismiss p. 12-14.

agreements, grant assurances, and applicable FAA regulations and law[] provide that a runway constructed pursuant to a federal grant must remain in existence for twenty years. . . . Defendants, all perform[ing] under color of state law, have infringed and/or deprived Plaintiff's rights guaranteed to them . . . ."  (Compl. ¶¶ 41-42; *see also* Pl.'s Mem. Supp. Opp. Mun. Defs.' Mot. Dismiss p. 4.)  In its Opposition to Municipal Defendants' Motion to Dismiss, MASA argues, in the alternative, that the AAIA provides a basis for its Section 1983 claim.  (Pl.'s Mem. Supp. Opp. Mun. Defs.' Mot. Dismiss p. 4-5.)

Municipal Defendants argue that pursuant to Rule 12(b)(6), Plaintiff fails to state a claim under Section 1983 because (i) MASA does not allege a constitutional violation protected by Section 1983, (ii) contract breaches are not actionable under Section 1983, (iii) Plaintiff fails to allege any direct due process violations committed by Frederick, and (iv) the Airport and Airway Improvement Act and Federal Aviation Act do not provide a basis for a Section 1983 action. (Mun. Defs.' Mem. Supp. Mot. Dismiss p. 12-14; Mun. Defs.' Reply Mem. p. 13-16.)

Quite simply, Plaintiff's Section 1983 claim fails because MASA has not alleged a deprivation of any right protected by the Constitution or laws of the United States, as required under 42 U.S.C. § 1983.  The relevant statutory language reads:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

"The starting point for any procedural due process claim is an analysis of whether the

plaintiff has a protected property interest." *Blackwell v. Mayor and Comm'rs of Delmar*, 841 F. Supp. 151, 155 (D. Md. 1993) (citations omitted). MASA alleges that its constitutional due process rights have been infringed by Municipal Defendants and points to the AAIA as the source of those rights. (Compl. ¶¶ 41-42; Pl.'s Mem. Supp. Opp. Mun. Defs.' Mot. Dismiss p.4-5.) Plaintiff's reliance on the AAIA as the source of its alleged federal rights does not satisfy the requirements for a Section 1983 claim, in part, because the AAIA provides no private cause of action.[5] *See Skydiving Ctr. of Greater Washington, D.C., Inc. v. St. Mary's County Airport Comm'n*, 823 F. Supp. 1273, 1279 n.2 (D. Md. 1993) (citing *New England Legal Found. v. Mass. Port Auth.,* 883 F.2d 157, 168 (1st Cir. 1989)); *see also Western Airlines, Inc. v. Port Auth. of New York and New Jersey,* 817 F.2d 222, 225 (2nd Cir. 1987), *cert. denied,* 485 U.S. 1006 (1988); *Arrow Airways, Inc. v. Dade County*, 749 F.2d 1489, 1491 (11th Cir. 1985)); *Nicholson Air Servs., Inc. v. Bd. of County Comm'rs of Allegany County*, 706 A.2d 124, 142 (Md. Ct. Spec. App. 1998) (rejecting lessee's claim that the AAIA was a valid basis for its Section 1983 claim against lessor airport and finding that the AAIA does not provide a private cause of action). Without a private cause of action, Plaintiff has not established a federal right upon which Municipal Defendants infringed and therefore fails to state a claim upon which relief

---

[5] This finding does not preclude MASA from filing a complaint with the FAA as "a person directly and substantially affected by [Municipal Defendant's][] alleged non-compliance" with the Airport Improvement Program, *see* 14 C.F.R. § 16.23(a), or the Federal Aviation Act or AAIA, *see* 14 C.F.R. § 13.1. Nevertheless, "[c]ourts interpreting § 47107 [grant assurances] have uniformly held that airport users have no right to bring an action in federal court claiming a recipient airport's violation of the § 47107 grant assurances until that claim has been raised with the FAA." *Airborne Tactical Advantage Co. LLC v. Peninsula Airport Comm'n*, 2006 WL 753016 (E.D. Va. 2006) (finding that district court lacked subject matter jurisdiction to issue an injunction against a lessor airport operator because the FAA's exclusive jurisdiction over the underlying investigation did not give rise to a federal cause of action).

can be granted.

Although this Court concludes *infra*, that the lease at issue does not grant MASA any rights over the turf runway, even if it did, those rights would likewise not give rise to a Section 1983 claim. "The Fourth Circuit has held that '[a] mere breach of [a] contractual right is not a deprivation of property without *constitutional* due process of law . . . . Otherwise, virtually every controversy involving an alleged breach of contract by a government . . . would be a constitutional case.'" *Piedmont Behavioral Health Ctr., LLC v. Stewart*, 413 F. Supp. 2d 746, 758 (S.D. W.Va. 2006) (quoting *Coastland Corp. v. County of Currituck,* 734 F.2d 175, 178 (4th Cir.1984)) (emphasis in original); *see also Qualls Assoc., Inc. v. Mayor and City Council of Baltimore*, 279 F. Supp. 2d 660, 662 (D. Md. 2003) (recognizing *Coastland*'s finding that a breach of contract does not give rise to a due process claim); *Nicholson Air Servs., Inc. v. Bd. of County Comm'rs of Allegany County*, 706 A.2d 124, 142 (Md. Ct. Spec. App. 1998) (questioning the validity of a Section 1983 claim brought by a lessee against the lessor airport, based on a terminated lease contract and affirming lower court's finding that lessor suffered no deprivation).

Property rights arising from a lease with an airport have generally not been enforced under the Due Process Clause. *See Nicholson Air Servs., Inc.*, 706 A.2d at 142; *Jetstream Aero Servs. v. New Hanover County*, 672 F. Supp 879, 883 (E.D.N.C. 1987) ("To allow plaintiff's alleged right to quiet enjoyment of its lease to reach constitutional dimensions . . . would be to open the doors to an already crowded federal forum as to all lease disputes."). As the court in *Jetstream* noted: "Where state law provides adequate remedies for any unlawful deprivation, due process is satisfied and the constitutional basis for the Section 1983 allegation is removed." *Id*. at 884. As a result, Count IV of Plaintiff's Complaint is dismissed, pursuant to Rule 12(b)(6).

Further, because Plaintiff has established no independent basis of jurisdiction, Count I as to Municipal Defendants is dismissed.

**II      Plaintiff's State Claims**

Although MASA's federal claims asserted in Counts I and IV are dismissed, this Court may exercise supplemental jurisdiction over Plaintiff's remaining state claims, Counts II and III, pursuant to its discretionary powers under 28 U.S.C. § 1367.  "[F]ederal courts generally have discretion to retain or dismiss state law claims when the federal basis for an action drops away." *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995); *Arbaugh v. Y & H Corp.*, ___ U.S. ___, 126 S. Ct. 1235, 1244-45 (2006) ("[W]hen a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims.").  A court weighs several factors to determine if it should use its discretion to retain jurisdiction over supplemental claims. "Among the factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy."  *Shanaghan*, 58 F.3d at 110 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

In weighing these discretionary factors, this Court notes that this case was filed nearly a year ago, in August 2005.  Additionally, convenience and fairness to the parties to have this dispute resolved, and considerations of judicial economy, weigh in favor of retaining jurisdiction over MASA's state claims.[6]

---

[6] First, resolving all claims in this case will prevent the parties from possibly re-litigating these state issues in state court, at additional cost to the parties and to the state courts.  Second, considerations of judicial economy weigh in favor of addressing these claims in this forum.

14

### A.     Count II - Breach of Contract under Maryland law

Count II alleges that Frederick breached its contract with MASA. MASA claims that its lease with Frederick "contemplates and was tied to use of the turf runway adjacent to the hangar and the closure of the turf runway is a breach of the actual terms of the lease, as well as implied covenants appurtenant thereto." (Compl. ¶ 33.) Frederick argues that this claim should be dismissed because "the Lease and Addendum to Agreement are clear and unambiguous" and do not create any rights for MASA beyond those with respect to the hangar. (Mun. Defs.' Mem. Supp. Mot. Dismiss at p. 9.) To allow additional evidence regarding Plaintiff's alleged rights over the turf runway, Frederick maintains, would violate the parol evidence rule. (Mun. Defs.' Mem. Supp. Mot. Dismiss at p. 8.) Plaintiff counters that Frederick ignores language concerning the turf runway contained in an addendum dated October 3, 1991, which Plaintiff argues requires interpretation, precluding dismissal. (Pl.'s Mem. Supp. Opp. Mun. Defs.' Mot. Dismiss at p. 3.) As documents "upon which Plaintiff relies in bringing the action," the lease and its addenda will be considered by this Court under Rule 12(b)(6) without converting Municipal Defendants' Motion to one for summary judgment. *See Biospherics v. Forbes*, 989, F. Supp. 748, 749 (D. Md. 1997).

Under Maryland law, the issue of whether a contract is ambiguous is a question of law, determined by the court. *Calomiris v. Woods,* 727 A.2d 358, 362-64 (Md.1999)). The Court of Appeals for the Fourth Circuit has recognized:

> Under the Maryland rule of objective contract interpretation, a court must give effect to the contract's plain meaning, without regard to

---

Furthermore, Plaintiff's claims do not raise novel questions of law and therefore do not raise concerns over comity between the state and federal courts.

> what the parties to the contract thought it meant or intended it to mean. The test for the meaning of an unambiguous contract is what a reasonable person in the position of the parties would have thought the contract meant. Other evidence of the parties' intent is relevant only if the contract is ambiguous.

*Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 253, 260 (4th Cir. 2005) (internal quotations and citations omitted).

The terms of MASA's lease with Frederick are unambiguous. At Plaintiff's own admission, its lease is for the glider hangar. (Pl.'s Opp. Mun. Defs.' Mot. Dismiss p. 3.) The turf runway is only mentioned in one provision of the 1991 addendum relating to FAA compliance, and nothing in the addendum bestows rights over the turf runway to MASA. *See supra* p. 3. Plaintiff argues that "[c]onstructing a glider hangar adjacent to a runway, certainly contemplates use of the runway." (Pl.'s Mem. Supp. Opp. Mun. Defs.' Mot. Dismiss p. 3.) Accepting this contention, nothing in the lease or its addenda provides MASA rights over any particular runway, much less the turf runway at issue. Further, as Plaintiff stated in its complaint, MASA has access to a paved runway parallel to the turf one. (*See* Compl. ¶ 21.) The contents of this lease are clear and do not bestow upon Plaintiff any express rights over the turf runway. Therefore, Plaintiff has failed to state a claim for breach of contract upon which relief can be granted pursuant to Rule 12(b)(6).[7]

---

[7] The Court finds it unnecessary to make a final determination on Frederick's argument that MASA's claims are preempted by federal law because nothing in the lease addresses MASA's claims over the turf runway. As the Fourth Circuit has noted, ". . . state contract claims escape preemption [] when courts would be confined to the terms of the parties' agreement." *Smith v. Comair, Inc.*, 134 F.3d 254, 258 (4th Cir. 1998). Plaintiff's breach of contract claim, as alleged, and the four corners of the agreement, require the Court only to interpret the terms of the lease, without resort to federal laws. Had the lease discussed MASA's rights over the turf runway, this Court may well have found it necessary to address preemption. *See e.g.*, *Skydiving Ctr. v. St. Mary's County Airport Comm'n*, 823 F. Supp. 1273 (D. Md. 1993) (finding that the

**B.      Count III - Intentional Interference with a Contract and Prospective Advantage**

Count III charges Municipal Defendants with intentional interference with a contract and prospective advantage.[8] All parties agree that Frederick must be dropped as a defendant in the interference with a contract claim because only non-parties to the contract at issue can be held liable under this tort. (*See* Pl.'s Mem. Supp. Opp. Mun. Defs.' Mot. Dismiss p. 17; Mun. Defs.' Mem. Supp. Mot. Dismiss p. 9-10 (citing *Kaser v. Financial Protection Marketing, Inc.*, 831 A.2d 49, 54 (Md. 2003)).) Municipal Defendants further argue that Abell and Dougherty are not appropriate defendants under this claim because as employees of a party to the contract, they are "standing in the shoes of the contracting party."[9] (Mun. Defs.' Mem. Supp. Mot. Dismiss p. 6-

---

AAIA's regulatory scheme on parachuting preempted local commission's ban of the plaintiff's parachuting operations from the county airport). However, nothing in this lease confers any rights over the turf runway.
       Frederick's preemption argument relies upon FAA statutes and regulations that bar any person from having exclusive rights over an "air navigation facility" for which government funds were used, or any landing area. (*See* Mun. Defs.' Mem. Supp. Mot. Dismiss at p. 5 (quoting 49 U.S.C. § 40103(e); 14 C.F.R. § 16.1(a)(1)).) These provisions are not implicated in this case, because the Court does not read the lease at issue to confer upon MASA any rights over the turf runway, and any rights MASA has over the hangar are not at issue. Nevertheless, the Court notes that MASA's lease contains several provisions limiting its rights over the hangar. *See* Pl.'s Opp. Mun. Defs.' Mot. Dismiss, Ex. 1 ¶ 10 (requiring MASA to carry insurance on the hangar), ¶ 12 (prohibiting MASA from subleasing the hangar without Frederick's prior consent); Pl.'s Opp. Mun. Defs.' Mot. Dismiss, Ex. 2 ¶¶ 1-2 (requiring MASA to comply with the FAA's requirements regarding the hangar).

   [8] It is unclear from Plaintiff's submissions whether Count III is intended to include one tort claim or separate claims for alleged interference with the lease and prospective advantage. This issue is of no moment because the Court's analysis applies equally to one or both claims of intentional interference.

   [9] Municipal Defendants' alternative arguments in support of dismissal of Plaintiff's tort claims are: (i) MASA's tort claims are procedurally barred under Section 5-304 of the Local Government Tort Claims Act ("LGTCA"), MD. CODE ANN., CTS. & JUD. PROC. § 5-304, for failure to provide notice; (ii) dismissal of this count cannot be circumvented under a "concert of action" theory; and (iii) Dougherty and Abell are entitled to qualified immunity. (Mun. Defs.' Mem. Supp. Mot. Dismiss at p. 7-11, 15-16.)

7.) Plaintiff contends that Abell and Dougherty can be held liable under this claim if they have acted outside the scope of their duties – an issue which Plaintiff claims cannot be determined prior to discovery. (Pl.'s Opp. Mun. Defs.' Mot. Dismiss at p. 3.) Plaintiff also argues that, unlike the prohibition against bringing an intentional interference with a contract claim against Frederick, all Municipal Defendants can be held liable for intentional interference with prospective advantage. (Pl.'s Opp. Mun. Defs.' Mot. Dismiss at p. 3.)

Plaintiff fails to sufficiently allege any claim for intentional interference because only non-parties to an economic relationship can be held liable for intentional interference, Defendants Abell and Dougherty are employees of Frederick, and MASA's Complaint is completely devoid of any allegations that either acted outside of their duties as agents of Frederick. "Recovery for intentional interference with an economic relationship is barred when the plaintiff and defendant are both parties to the economic relationship." *Hejirika v. Maryland Div. of Correction*, 264 F. Supp. 2d 341, 347 (D. Md. 2003) (citing *Lewis v. Forest Pharm., Inc.*, 217 F. Supp. 2d 638, 660 (D. Md. 2002)). Maryland courts have declined to hold employees, agents or officers of a party to a contract liable under claims of intentional interference with a contract. *See K & K Mgt., Inc. v. Lee*, 557 A.2d 965, 981 n.14 (Md. 1989) (rejecting "an analysis under which corporate officers, agents or employees, acting on behalf of a corporation within the scope of their authority, are viewed as actors [] separate from their corporation [] and thereby can maliciously interfere with business relations between their corporation [] and the plaintiff . . . ."). Additionally, this Court has refused to hold contracting parties or their employees liable under intentional interference with prospective advantage. *See Hejirika*, 264 F. Supp. 2d at 343 (dismissing intentional interference claim against state employees because

plaintiff failed to allege that defendant department of correction employees were acting outside the scope of their employment).

No Municipal Defendant in this case can be held liable under an intentional interference claim. Frederick is not a proper defendant to the intentional interference claim because it is a party to the lease at issue. *See K & K Mgt., Inc. v. Lee*, 557 A.2d at 981. Moreover, as employees and officers of Frederick, Abell and former Mayor Dougherty cannot be held liable for intentional interference with an economic relationship. *See id.*; *Hejirika*, 264 F. Supp. 2d at 343. Finally, Plaintiff's argument that Abell and Dougherty may be liable for actions outside the scope of their duties (and that discovery is necessary on this issue) was raised for the first time in its Opposition, in an attempt to salvage this claim. None of the named Defendants may be held liable under Plaintiff's Count III and Plaintiff fails to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

## CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss are GRANTED and Plaintiff's Complaint is DISMISSED with Prejudice. The Court will issue a separate Order consistent with this Opinion.

June 29, 2006                                       /s/
                                                    Richard D. Bennett
                                                    United States District Judge